# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GEORGE HASTINGS, | Civil Action No. 11 - 93 |
| Plaintiff, | |
| | District Judge Kim R. Gibson |
| v. | Chief Magistrate Judge Lisa Pupo Lenihan |
| MS. SHINIG SMEAL, et al | ECF Nos. 38, 40 |
| Defendants. | |

## REPORT AND RECOMMENDATION

### I. RECOMMENDATION

For the reasons that follow, it is respectfully recommended that Defendants' Motions to Dismiss (ECF Nos. 38, 40) be granted and that Plaintiff's claims be dismissed with prejudice.

### II. REPORT

Plaintiff, George Hastings, an inmate currently housed at Coleman Hall, a Community Corrections Facility in Philadelphia, commenced this action on April 14, 2011, alleging violations of his constitutional rights in connection with the handling of his pre-release application in 2010. (ECF No. 3.) Plaintiff filed an Amended Complaint on July 18, 2011. (ECF No. 33.)

Plaintiff names as Defendants: (1) Ms. Shinig Smeal ("Smeal"), (2) Grievance Officer Kerr Moore ("Moore"), (3) Staff Assistant Samuel J. Montgomery ("Montgomery"), (4) Captain Turner ("Tuner") (5) Superintendent Burns[1] ("Burns"), (6) Warden Pleacher ("Pleacher"), (7)

---

[1] Incorrectly referred to as Warden Burns in Plaintiff's Complaint and Amended Complaint.

1

Warden John Paul ("Paul"), (8) Classification Manager Ms. Billy Heide ("Heide"), (9) Mental Health Doctor Karamudi ("Karamudi"), (10) Unit Manager Mr. Cree ("Cree"), (11) Counselor Ms. Upton ("Upton"), and (12) Inmate Accounts Ms. Bennits ("Bennits").

On July 25, 2011, Defendants Smeal, Moore, Montgomery, Turner, Burns, Pleacher, Paul, Heide, Cree, Upton, and Bennits (collectively, "DOC Defendants") filed a Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 38) and a Brief in Support of the Motion to Dismiss (ECF No. 39). On August 5, 2011, Defendant Karamudi filed a Motion to Dismiss or in the alternative, Motion for Summary Judgment[2] (ECF No. 40) and a Brief in Support of the Motion (ECF No. 41). On November 28, 2011, Plaintiff filed a motion which this Court construed as a response in opposition to Defendants' motions (ECF No. 50).

### A. Plaintiff's Allegations

The following allegations are set forth in Plaintiff's original Complaint and Amended Complaint.[3] In Plaintiff's original Complaint, Plaintiff states that he "came back" to the Department of Corrections on October 5, 2007, to serve a sentence on a DUI conviction. (ECF No. 3 at 2.) In November 2009, Plaintiff "was staffed for and granted prerelease and or parole upon completion of the T.C. program" by his counselor, Mr. Davidson, and unit manager, Mr. Pineda. (ECF No. 3 at 2.) However, he was later informed that he would not be eligible for prerelease until March 2010. (ECF No. 3 at 2.)

---

[2] Because Plaintiff had not filed a concise statement of material facts and discovery had not yet taken place, the Court construed Defendant's motion solely as a motion to dismiss. *See* ECF entry Aug. 9, 2011.

[3] Plaintiff failed to include certain facts in his Amended Complaint that appeared in his original Complaint. Because Plaintiff is proceeding *pro se*, the Court must read his complaint liberally. Therefore, the Court will consider the allegations in the original Complaint along with those in the Amended Complaint for purposes of resolving Defendants' motions. *See* Weigher v. Prison Health Servs., 402 Fed.Appx. 668, 669 n.1 (3d Cir. 2010) (noting that district court took into account both the original and amended complaint in deciding motion to dismiss and doing same on appeal); Gold v. Metz Law Firm, LLC, No. 08-207, 2010 U.S. Dist. LEXIS 13566, at *10-11 (W.D. Pa. Feb. 17, 2010) (considering factual averments in plaintiff's prior complaints, as well as his second amended complaint, in deciding motion to dismiss).

Plaintiff was transferred to H-Block shortly before March 2010 at which point he was given a new counselor, Defendant Upton, and unit manager, Defendant Cree. (ECF No. 3 at 2.) Plaintiff states that he sent a request slip to Defendant Upton inquiring about prerelease and was told that he would not be staffed until July because she could not get to his paperwork. (ECF No. 3 at 2.) Unsatisfied with this response, Plaintiff went to Defendant Cree who told him that he would be staffed "right away." (ECF No. 3 at 2.) According to Plaintiff, no paperwork was ever filed and he was told "they would get to it when they got to it." (ECF No. 3 at 2.)

Plaintiff then sent a request slip to Defendant Heide seeking the status of his prerelease, and she informed him that she would speak to Defendant Upton and get him staffed. (ECF No. 3 at 2.) After nothing happened, Plaintiff sent a request in to Defendant Pleacher, who allegedly advised Defendant Upton to staff Plaintiff. (ECF No. 3 at 2.)

Plaintiff filed a grievance (Grievance No. 325460) on July 9, 2010, in which he complained that Defendant Upton was deviating from prerelease criteria and that his prerelease was not being processed quickly enough. (ECF Nos. 3 at 2, 38-2 at 6.) Defendant Heide denied Plaintiff's grievance but responded that he would be "staffed real soon." (ECF No. 3 at 2.) Two weeks later, Plaintiff was told that he could not be staffed due to a warrant in Delaware. (ECF No. 3 at 2.) However, his wife was told that no warrant existed and Plaintiff passed this information on to Defendants Burns, Pleacher, and Heide. (ECF No. 3 at 2.) Defendant Pleacher told Plaintiff that he had confirmed there were no warrants and that the prerelease should not have been stopped and his staffing would proceed. (ECF No. 3 at 2.)

Plaintiff was informed on October 7, 2010, that he would be staffed on October 11, 2010. (ECF No. 3 at 2.) However, Plaintiff was not staffed until October 22, 2010. (ECF No. 3 at 2.) At staffing, Defendant Heide asked Plaintiff why he felt he qualified for prerelease, and after

3

hearing his program history and progress, stated that he had a good record and had completed all that he was asked to do. (ECF No. 3 at 2-3.) Plaintiff alleges that Defendant Cree stated he had a problem giving Plaintiff support since he had filed a grievance and wrote a letter to Central Office. (ECF No. 3 at 3.) He also stated that because a DUI is a serious offense, he was denying Plaintiff's prerelease. (ECF No. 3 at 3.) Plaintiff also alleges that Defendant Upton said she had a problem with the grievance he filed against her. (ECF No. 3 at 3.)

Less than a week later, Plaintiff was called into Defendant Upton's office and told that he was denied prerelease and support for parole and that Central Office had denied the requests as well. (ECF No. 3 at 3.) Plaintiff alleges that Defendants Cree and Upton denied him prerelease without following proper procedure in that a vote sheet was not submitted to the Education Department or to the Corrections Officer in charge of his job responsibilities. (ECF No. 3 at 3.) He contends that the prerelease decision was dishonest and/or in retaliation for his grievance and for the letter he sent to Central Office related to the delay in processing his prerelease paperwork. (ECF No. 3 at 3.)

Plaintiff further alleges that Defendants Moore, Heide, Upton, and Cree made unspecified "threatening allegations" and that Defendant Cree threatened to deny him parole and also threatened that he was going to hit him. (ECF No. 3 at 3.)

Plaintiff's Amended Complaint is largely unintelligible and difficult to decipher, but he appears to repeat allegations of verbal threats. Specifically, Plaintiff states that Defendant Cree attempted to assault him and threatened him in front of other inmates; Defendant Upton threatened to call and have him beat up; Defendant Heide made threatening allegations in front of other inmates; and Defendant Smeal jeopardized the safety of the inmates by failing to investigate staff. (ECF No. 33 at 2-3.) Plaintiff further alleges that Defendant Karamudi refused

to file any report about "what Ms. Heide did to me and what Mr. Cree said when told him my loss of sleep and mental anguish and the assault and threat." (ECF No. 33 at 3.)

### B. Standard of Review

When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), courts must accept all factual allegations in the complaint as true and read them in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). A complaint must be dismissed pursuant to Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 556 (2007). "Factual allegations must be enough to raise a right to relief above a speculative level." Id. at 555. The court need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint. *See* California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp., 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). Additionally, a civil rights claim "must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple and conclusory statements are insufficient to state a claim under § 1983." Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir. 1987).

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. Pension Benefit Guar. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. Id. (citations omitted). Moreover, a district court may consider indisputably

authentic documents without converting a motion to dismiss into a motion for summary judgment. Spruill v. Gills, 372 F.3d 218, 223 (3d Cir. 2004); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Finally, a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003). In a section 1983 action, the court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)). *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See*, *e.g.*, Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 2102 (10th Cir. 1996).

### C. DOC Defendants' Motion to Dismiss

DOC Defendants seek dismissal of Plaintiff's claims on the basis that Plaintiff failed to exhaust his available administrative remedies pursuant to the Prison Litigation Reform Act, or in the alternative, on the basis that Plaintiff fails to state a claim upon which relief may be granted. Since the Court finds that exhaustion of administrative remedies is a threshold issue with respect to Plaintiff's claims regarding prerelease, namely that denial was improper and in retaliation for filing a grievance, there is no need to consider Defendants' arguments that Plaintiff fails to state

6

a valid section 1983 claim. However, the Court will examine Defendants' argument in light of Plaintiff's allegations of verbal threats as Defendants have not raised exhaustion as an affirmative defense to any such claim.

1. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") requires prisoners to present their claims through an administrative grievance process before seeking redress in federal court. Pursuant to 42 U.S.C. § 1997e(a) of the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in a jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (1996); *see also* McCarthy v. Madigan, 503 U.S. 140, 144 (1992) ("[w]here Congress specifically mandates, exhaustion is required"). Exhaustion is required under this provision regardless of the type of relief sought and the type of relief available through administrative procedures. *See* Booth v. Churner, 532 U.S. 731, 741 (2001). In addition, the exhaustion requirement applies to all claims relating to prison life which do not implicate the duration of the prisoner's sentence. *See* Porter v. Nussle, 524 U.S. 516, 532 (2002).

The PLRA also mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjunctive system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91. Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seek[] to 'affor[d] corrections

officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" Id. at 93 (quoting Porter, 534 U.S. at 525).

In Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003), the Third Circuit Court of Appeals stated that "[f]ailure to exhaust administrative remedies is an affirmative defense for the defendant to plead." *See also* Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002) (stating a prisoner does not have to allege in his complaint that he has exhausted administrative remedies). The United States Supreme Court in a subsequent decision similarly held that because an inmate's failure to exhaust administrative remedies is an affirmative defense, the inmate is not required to specifically plead or demonstrate exhaustion in his or her complaint. Jones v. Bock, 549 U.S. 199, 216 (2007). Accordingly, it is the burden of a defendant asserting the defense of non-exhaustion to plead and prove it. Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002).

The Pennsylvania Department of Corrections ("DOC") has an Inmate Grievance System which permits any inmate to seek review of problems that may arise during the course of confinement. 37 PA. CODE § 93.9(a); *see also* www.cor.state.pa.us, DOC Policies, Policy No. DC-ADM 804, Inmate Grievance System. After an attempt to resolve any problems informally, an inmate may submit a written grievance to the facility's Grievance Coordinator for initial review. An inmate may then appeal an adverse decision of the Grievance Coordinator to the Superintendent of the institution, and can finally appeal to the Secretary of the DOC Office of Inmate Grievances and Appeals. *See* Booth v. Churner, 206 F.3d 289, 293 n.2 (3d Cir. 2000) (outlining Pennsylvania's grievance review process).

In the instant case, Defendants argue that Plaintiff's claims should be dismissed because he did not fully exhaust his administrative remedies with respect to any of his claims regarding

prerelease. Defendants assert that, although Plaintiff filed two grievances raising issues with prerelease (Grievance Nos. 325460 and 347180), he failed to properly exhaust in both instances.

In Grievance Number 325460, received by the Superintendent's Assistant on July 9, 2010, Plaintiff complained that Defendant Upton was deviating from prerelease criteria and electing to make up her own criteria, and he asked that his application process for prerelease be expedited. (ECF No. 38-2 at 6-7.) According to Plaintiff, Defendant Upton was procrastinating and was not aware that the prerelease process could begin 18 months prior to an inmate's minimum sentence date. (ECF No. 38-2 at 6.) Defendant Heidi conducted the initial review and denied the grievance, explaining that Plaintiff had not been time eligible until July 2010 as he had to serve one-half of his minimum sentence under the DOC's criteria. (ECF No. 38-2 at 5.) Defendant Heidi also assured Plaintiff that his unit team had ordered his paperwork and was preparing a packet to have him staffed for participation consideration in the prerelease process. (ECF No. 38-2 at 5.) Plaintiff appealed, insisting that his rights were violated because the Inmate Handbook referenced starting the paperwork 18 months in advance of an inmate's minimum sentence. (ECF No. 38-2 at 4.) Defendant Burns denied Plaintiff's appeal, explaining that staff were following policy correctly. (ECF No. 38-2 at 3.) Plaintiff's appeal to final review was rejected because he failed to submit the required documentation with his appeal. (ECF No. 38-2 at 2.)

Plaintiff's second grievance, Grievance Number 347180, received by the Superintendent's Assistant on December 17, 2010, consists of the same 2-page typed statement of claim found in Plaintiff's original Complaint. (ECF No. 38-2 at 15.) Defendant Pleacher responded by denying the grievance on December 28, 2010, finding that Plaintiff's prerelease staffing was timely and that the denial was reasonable. (ECF No. 38-2 at 14.) Defendant

Pleacher explained that Plaintiff began serving his re-entry sentence on August 18, 2009, and was staffed for prerelease on October 22, 2010, 7 months before expiration of his minimum sentence, which Defendant Pleacher found to be a reasonable time frame considering concern over Plaintiff's outstanding charges in Delaware. (ECF No. 38-2 at 14.) As to the denial decision, Defendant Pleacher explained:

> I note that this is your 4th State Commitment for DUI, and that you have had 16 total criminal convictions dating back to 1978. While your adjustment during this commitment has been adequate, staff noted that in their professional opinion you play down the seriousness of your current offense and past history.

(ECF No. 38-2 at 14.) Plaintiff appealed the denial of the grievance to final review at which point his appeal was dismissed for failure to submit the required documentation. (ECF No. 38-2 at 11-13.)

Plaintiff's failure to submit the required documentation for purposes of his final appeal in the grievance process is fatal to his claims regarding the processing and denial of his prerelease. *See* Plummer v. Iannuzzi, No. 1:11-cv-0296, 2011 U.S. Dist. LEXIS 120697 at *9-10 (M.D. Pa. Oct. 19, 2011) (finding the plaintiff had failed to properly exhaust his administrative remedies when his grievance appeal was dismissed due to his failure to provide documentation for proper review); *see also* Mack v. Klopotoski, No. 4:cv-08-1096, 2010 U.S. Dist. LEXIS 99103, at *23-25 (M.D. Pa. Sept. 21, 2010) (same); Rivers v. Stratton, No. 3: cv-05-0091, 2005 U.S. Dist LEXIS 31361, at *13-14 (M.D. Pa. Nov. 21, 2005) (same). Because Plaintiff's grievance appeals were dismissed for failure to follow grievance procedural rules, the Court finds that Plaintiff failed to properly exhaust all available administrative remedies prior to filing suit. His claims regarding the processing and denial of his prerelease are thus barred and should be dismissed.

2. Liability under 42 U.S.C. § 1983

Plaintiff seeks to assert liability against Defendants pursuant to 42 U.S.C. § 1983. To state a claim under section 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

To the extent Plaintiff seeks relief for various verbal threats made by Defendants, as alleged throughout his Complaint and Amended Complaint, he has failed to state a claim as a matter of law. Even accepting Plaintiff's allegations as true, mere verbal threats do not give rise to constitutional violations, and are thus not actionable under section 1983. *See* Gay v. City of Phila., No. 03-5358, 2005 U.S. Dist. LEXIS 15840, at *15-16 (E.D. Pa. Aug. 2, 2005) ("[I]t is well-established that verbal abuse or threats alone do not state a constitutional claim."); Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185, 189 (D. N.J. 1993) ("Verbal harassment does not give rise to constitutional violation enforceable under § 1983.") Because Defendants' alleged verbal threats are not actionable, and as it is clear that leave to amend with respect to those claims would be futile, Plaintiff's claims should be dismissed with prejudice.[4]

---

[4] In dismissing Plaintiff's Amended Complaint, the Court is mindful of the fact that *pro se* pleadings are to be construed liberally, Haines v. Kerner, 404 U.S. 519, 520 (1972), and *pro se* litigants are to be granted leave to file a curative complaint even when they do not seek leave to do so, "unless an amendment would be inequitable or futile." Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). However, a complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002).

### D. Defendant Karamudi's Motion to Dismiss

Defendant Karamudi, a psychiatrist at SCI-Laurel Highlands, seeks dismissal of Plaintiff's Amended Complaint on the grounds that Plaintiff failed to exhaust his administrative remedies as required by the PLRA, or in the alternative, on the grounds that Plaintiff fails to state a claim upon which relief may be granted. As with the DOC Defendants, the Court finds that Plaintiff failed to exhaust his administrative remedies as to any complaint related to or concerning Defendant Karamudi and thus his claims against Defendant Karamudi should be dismissed on that basis.

Plaintiff's only allegation regarding Defendant Karamudi in his Amended Complaint is that he "would not file in my report of what Ms. Heide did to me and what Mr. Cree said when told him my loss of sleep and mental anguish and the assault and threat." (ECF No. 33 at 3.) Plaintiff does not specify as to what Defendant Karamudi allegedly failed to report and he does not otherwise set forth any substantive factual allegations concerning Defendant Karamudi's conduct. However, the Court does note that in Plaintiff's original Complaint, he states that he was seen by the "psych dept" and asked if he was ever "approached or threatened by an inmate" to which Plaintiff responded that he was threatened by Defendant Cree about denying his parole but the "psych rep said he would not put that down." (ECF No. 3 at 3.) As such, it appears Plaintiff may be claiming that Defendant Karamudi failed to report Plaintiff's own allegation that Defendant Cree threatened to deny him parole or prerelease.

In support of dismissal based on failure to exhaust, Defendant Karamudi submitted Plaintiff's complete grievance record consisting of grievances filed by Plaintiff which were

12

appealed to the final level of review in the grievance process[5] ("Exhibit A"). (ECF No. 41-1.) The documents contained within Exhibit A consist of five grievances, of which Plaintiff appealed to final review,[6] and nine inmate requests forms. (ECF No. 41-1.) A detailed review of the documents reveals that Defendant Karamudi is not the subject of or in fact even referenced in any complaint or grievance by Plaintiff with the exception of Plaintiff's allegation regarding his statement to the "psych rep" about Defendant Cree threatening to deny his parole/prerelease. (ECF Nos. 38-2 at 17; 41-1 at 53.) This statement was contained within Plaintiff's Grievance Number 347180, of which Plaintiff's original Complaint mirrored. However, the overwhelming subject of this two-paged, single spaced grievance concerned the processing and denial of Plaintiff's prerelease. Plaintiff's single complaint about the "psych rep" was only one sentence and, when read in context of the whole grievance, clearly concerned Defendant Cree's alleged retaliatory behavior in denying Plaintiff prerelease and not any alleged wrongdoing on the part of Defendant Karamudi. Nevertheless, as noted above, this grievance was subsequently dismissed for Plaintiff's failure to submit required documentation for proper review on appeal. Therefore, even if the Court were to assume Plaintiff presented his claims regarding Defendant Karamudi through the inmate grievance process at his facility, his claims were not properly exhausted because he failed to comply with grievance procedural rules.

Despite having the opportunity to do so, Plaintiff did not respond with any assertion to rebut Defendant Karamudi's claim that he failed to comply with the PLRA's mandatory

---

[5] The Court will consider Plaintiff's grievances and appeals as "indisputably authentic documents." *See* Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir. 2004) ("Given that the exhaustion issue turns on the indisputably authentic documents related to Spruill's grievances, we hold that we may consider these without converting it to a motion for summary judgment.")

[6] Only two of Plaintiff's five grievances were properly exhausted, the other three having been dismissed at the final appeal stage for failure to provide required documentation for proper review. *See* ECF No. 41-1.

exhaustion requirement prior to filing suit. Given the absence of complaints regarding Defendant Karamudi's conduct in any of Plaintiff's grievances, the Court finds that Plaintiff did not properly exhaust his administrative remedies, and therefore, his claims should be dismissed.

## III. **CONCLUSION**

For the reasons set forth above, it is respectfully recommended that Defendants' Motions to Dismiss (ECF Nos. 38, 40) be granted and that Plaintiff's claims be dismissed with prejudice. Because it is recommended that Defendant Karamudi's Motion to Dismiss be granted, the motion for summary judgment in the alternative should be denied as moot.

In accordance with the applicable provisions of the Magistrate Judges Act [28 U.S.C. § 636(b)(1)(B)&(C)] and Rule 72.D.2 of the Local Rules of Court, the parties shall have fourteen (14) days from the date of the service of this report and recommendation to file written objections thereto. Any party opposing such objections shall have fourteen (14) days from the date on which the objections are served to file its response. A party's failure to file timely objections will constitute a waiver of that party's appellate rights.

Dated: January 19, 2012

_____
Lisa Pupo Lenihan
Chief United States Magistrate Judge

cc: George Hastings
    Coleman Hall
    3200 Henry Avenue
    Philadelphia, PA 19239-1137

    George Hastings
    JL-6831
    Minsec Chester CCF #117
    SCI Laurel Highlands

5706 Glades Pike
P.O. Box 631
Somerset, PA  15501-0631[7]

Counsel of record.

---

[7] Plaintiff's address of record on this case is SCI Laurel Highlands, however, the return address of his last filing is the Community Correction Center at Coleman Hall in Philadelphia, so this R&R is being sent to both addresses. Plaintiff is advised that it is his responsibility to file a change of address notice with the Court.